U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 2 8 2012

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TASHA HENRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:12-CV-786-A |
| | § | |
| BANK OF AMERICA, N.A., ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion to remand filed in the above-captioned action by plaintiff, Tasha Henry, after defendant Bank of America, N.A. ("BANA") removed the action to this court.[1] Having considered plaintiff's motion to remand and BANA's response, BANA's original notice of removal and accompanying documents, plaintiff's original petition,[2] and applicable legal authorities, the court concludes that plaintiff's motion should be granted, and this action should be remanded to the state court from which it was removed.

---

[1] Plaintiff also sued NTFN, Inc. ("NTFN") and "unknown defendants." Pet. at 1-2. Defendant BANA has alleged that NTFN was improperly joined, and BANA filed the notice of removal solely on its own behalf.

[2] Plaintiff filed an amended complaint in this action; however, such amended complaint is nearly identical to the original petition, and contains no relevant differences from the original petition that could affect the court's analysis.

I.

## Background and Grounds for the Motion

Plaintiff initiated this action by filing her original petition against BANA and NTFN, Inc. ("NTFN") in the District Court of Tarrant County, Texas, 342nd Judicial District, as Cause No. 342-262146-12.  BANA removed the action to this court, alleging that NTFN, a Texas citizen, was improperly joined in order to defeat diversity jurisdiction under 28 U.S.C. § 1332, and that the requirements for diversity jurisdiction would be met if NTFN had not been named as a defendant.  In its notice of removal, BANA also asserts that federal question jurisdiction pursuant to 28 U.S.C. § 1331 exists because plaintiff's claims are based on or relate to the Fair Housing Act ("FHA"), United States Department of Housing and Urban Development ("HUD") regulations, Fair Credit Reporting Act ("FCRA"), and the Real Estate Settlement and Procedures Act ("RESPA").

Plaintiff filed a motion to remand the action pursuant to 28 U.S.C. § 1447(c), claiming that NTFN was properly joined, but failing to address BANA's argument that federal question jurisdiction exists.  BANA filed a response, arguing only that

2

federal question jurisdiction exists,[3] and failing to address any issues involving diversity jurisdiction.

## II.

## Analysis

### A.   Basic Principles of Removal

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court any state court action over which the federal district court would have original jurisdiction.  "The removing party bears the burden of showing that federal subject matter jurisdiction exists and that removal was proper."  Manguno v. Prudential Prop. Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2001).  "Moreover, because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute."  Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365-66 (5th Cir. 1995) (citation omitted).  Any doubts about whether removal jurisdiction is proper must therefore be resolved against the exercise of federal jurisdiction.  Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000).

---

[3] In BANA's response, it renewed the contentions from its notice of removal that federal question jurisdiction existed because of HUD and FHA regulations, but failed to discuss its contentions that RESPA and FCRA also created federal question jurisdiction.

3

B.   <u>Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332</u>

To establish jurisdiction pursuant to 28 U.S.C. § 1332, BANA must establish complete diversity between the parties and an amount in controversy exceeding the sum or value of $75,000.00, exclusive of interest and costs.  Assuming for the sake of argument that NTFN was improperly joined and the parties are therefore completely diverse, BANA has still not sufficiently alleged that the amount in controversy exceeds $75,000.00.

To determine the amount in controversy for the purpose of establishing diversity jurisdiction, the court ordinarily looks to the plaintiff's state court petition.  <u>Manguno</u>, 276 F.3d at 723.  If it is not facially apparent from the petition that the amount in controversy is greater than $75,000.00, the removing party must set forth summary judgment-type evidence, either in the notice of removal or in an affidavit, showing by a preponderance of the evidence that the amount in controversy exceeds that amount.  <u>Id.</u>; <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1335 (5th Cir. 1995).  The amount in controversy is measured from the perspective of the plaintiff.  <u>Vraney v. Cnty. of Pinellas</u>, 250 F.2d 617, 618 (5th Cir. 1958) (per curiam).  In an action for declaratory or injunctive relief, the amount in controversy is the "value of the object of the litigation," or "the value of the right to be protected or the extent of the

4

injury to be prevented." Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983).

BANA contends that because plaintiff seeks injunctive relief to bar any foreclosure proceedings on the property, the minimum amount in controversy should be based on the fair market value of the property, which BANA claims is "at least $132,500.00." Notice of Removal at 3. Plaintiff's petition does not make a demand for a specific amount of damages, does not specify a dollar amount of recovery sought that is at least $75,000.00, and does not define with specificity the value of the right plaintiff seeks to protect or the extent of the injury plaintiff seeks to prevent. As a result, the court evaluates the true nature of plaintiff's claims to determine the amount actually in controversy between the parties.

The true nature of this action is to prevent BANA from taking possession of the property pursuant to its foreclosure proceedings, and to require BANA to set aside the acceleration of note and reinstate the note without charges, penalties, or interest. As the petition alleges, plaintiff pursues these goals by seeking (1) a judgment preventing BANA from foreclosing on the property; (2) an accounting of transactions related to her loan; (3) an order setting aside the acceleration of the note and reinstating the note without late charges, penalties, or

5

interest; and (4) an award of unspecified damages and attorney's fees related to the foreclosure proceedings.  Pet. at 22-23.

BANA contends that the fair market value of the property should serve as the amount in controversy because plaintiff requests equitable relief to enjoin defendant from foreclosing on the property.  Notice of Removal at 3-4.  BANA relies on the oft-cited argument that when equitable relief is sought, "[t]he amount in controversy is measured by the value of the object of the litigation" and that when a mortgagor is attempting to protect his or her property, the fair market value of the property creates the amount in controversy.  Id.  The court is not persuaded by the argument that this figure supplies the basis for plaintiff's interest in the property, especially given that plaintiff has not pleaded how much equity she has in the property.  BANA does not cite to, nor can the court discern, any such statement in the petition to support a finding that the value of the property is the amount in controversy.  That is, BANA's attribution of the $235,200.00 figure as damages is an act of its own doing--not plaintiff's.  To the extent that these statements suggest that the property value is the proper measure

of the amount in controversy in this action, the court rejects that argument.[4]

Plainly, the sole goal of plaintiff's action is to avoid or delay a foreclosure sale and to be able to retain possession of the property.  Nothing is alleged that would assign a monetary value to plaintiff's accomplishment of those goals.  While plaintiff appears to request equitable relief based on a claim that she is entitled to hold legal title in the property, she does not assert that such relief is based on a claim that she has outright ownership of the property, free from any indebtedness.  Indeed, plaintiff makes statements to suggest that her ownership of the property is encumbered by a debt, as the amended complaint states that plaintiff contacted BANA and negotiated with BANA regarding a possible loan modification, and plaintiff also prays for the note to "be reinstated according to law without applicable late charges, penalties, and interest."  Pet. at 3-6, 23.  The value to plaintiff of her rights in the litigation is, at most, the value of her interest in the property, not the value

---

[4] The court is familiar with the unpublished Fifth Circuit opinion, Nationstar Mortg. LLC v. Knox, 351 F. App'x 844 (5th Cir. 2009).  The pertinent portion of Nationstar, in turn, relies on Waller v. Prof'l Ins. Corp., 296 F.2d 545, 547-48 (5th Cir. 1961).  This court has previously explained its reasoning for finding Waller inapposite to determining the amount in controversy in cases such as the instant action.  See Ballew v. America's Servicing Co., No. 4:11-CV-030-A, 2011 WL 880135 (N.D. Tex. Mar. 14, 2011).

of the property itself.  Considering plaintiff's original

petition and BANA's assertions, the court has not been provided

with any information from which it can determine that the value

to plaintiff of such relief is greater than $75,000.00.  Thus,

BANA has not established the value of plaintiff's interest in the

property.

Thus, after having evaluated the pleadings, and after

reviewing applicable legal authorities, the court remains

unpersuaded that the amount in controversy in this action meets

or exceeds the amount required for diversity jurisdiction to

exist.

C.   Federal Question Jurisdiction Pursuant to 28 U.S.C. § 1331

A federal court has federal question jurisdiction over an

action only if "a federal question appears on the face of the

plaintiff's well-pleaded complaint." Elam v. Kan. City S. Ry.

Co., 635 F.3d 796, 803 (5th Cir. 2011).  The complaint must

establish that "federal law creates the cause of action or that

the plaintiff's right to relief necessarily depends on resolution

of a substantial question of federal law." Empire Healthchoice

Assurance, Inc. v. McVeigh, 547 U.S. 677, 690 (2006); Borden v.

Allstate Ins. Co., 589 F.3d 168, 172 (5th Cir. 2009).  Federal

question jurisdiction does not arise from the "mere presence of a

federal issue in a state cause of action." Merrell Dow Pharms.,

Inc. v. Thompson, 478 U.S. 804, 813 (1986).  See also Singh v.
Duane Morris, LLP, 538 F.3d 334, 338 (5th Cir. 2008).  The
Supreme Court has not "treated 'federal issue' as a password
opening federal courts to any state action embracing a point of
federal law."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g &
Mfg., 545 U.S. 308, 314 (2005).

        While the Supreme Court has not provided a "single, precise
definition of statutory "arising under" jurisdiction, Merrell
Dow, 478 U.S. at 808, it has stated that "the question is, does a
state-law claim necessarily raise a stated federal issue,
actually disputed and substantial, which a federal forum may
entertain without disturbing any congressionally approved balance
of federal and state judicial responsibilities."  Grable, 545
U.S. at 314.  Based on Grable, the Fifth Circuit has set forth
four factors that must be present to establish federal question
jurisdiction when there is a federal issue present in a state law
claim: (1) the resolution of the federal issue is necessary for
the resolution of the state issue; (2) the federal issue is
actually disputed; (3) the federal issue is substantial; and (4)
federal jurisdiction will not disturb the balance of federal and
state judicial responsibilities.  Singh, 538 F.3d at 338.

1.   Alleged Failure to Comply with HUD and FHA Regulations
     Within Plaintiff's Contract Claims

BANA contends that federal question jurisdiction exists

because plaintiff includes in her breach of contract claim that

BANA violated provisions of HUD and FHA that regulate the note

and deed of trust.  Notice of Removal at 4.  BANA also claims

that jurisdiction exists because plaintiff requests an accounting

of transactions related to her loan, pursuant to RESPA.  Id.

Finally, BANA claims that because plaintiff seeks damages related

to her credit status, such "damages are preempted by [FCRA]."

Id.  Specifically, BANA in its response refers to plaintiff's

allegations that BANA "is not authorized to accelerate or

foreclose if not so permitted by HUD regulations" and that "HUD

regulations were and are part of an integrated contract to which

[BANA] is bound to comply."  Resp. at 1; Pet. at 8.  BANA then

cites plaintiff's allegations surrounding BANA's alleged failure

to comply with FHA regulations by failing to conduct a face-to-

face interview with plaintiff, failing to inform plaintiff of

available assistance, and refusing to accept partial payments.

Notice of Removal at 2; Pet. at 9.  BANA, however, provides

little, if any, support or authority for its contentions that

federal question jurisdiction exists in this action.

This court has found that federal question jurisdiction does not exist in cases very similar to this action, either because the federal issue was not substantial or actually disputed, or because exercising federal jurisdiction would disturb the balance between state and federal judicial responsibilities. Leggette v. Wash. Mut. Bank, F.A., No. 3:03-CV-2909-D, 2005 WL 2679699, at *4 (N.D. Tex. Oct. 19, 2005) ("Exercising federal jurisdiction over home foreclosure disputes typically governed by private contract and state law portends a significant transfer of judicial responsibilities from state to federal courts."); Buis v. Wells Fargo, N.A., 401 F. Supp.2d 612 (N.D. Tex. 2005); Goffney v. Bank of Am., --- F. Supp.2d ---, 2012 WL 4127952 (S.D. Tex. Sept. 17, 2012).

Both Buis and Leggette are factually similar to this action. In Buis, the plaintiff asserted a wrongful foreclosure claim, alleging that the defendant breached a note and deed of trust by failing to comply with certain HUD regulations, such as failing to conduct a face-to-face interview and failing to make a reasonable effort to conduct such an interview.[5] Buis, 401 F. Supp.2d at 614. The defendant contended that jurisdiction was proper because the application and interpretation of the federal

---

[5] Plaintiff in this action made a similar, if not identical, allegation. Pet. at 9.

regulations were a "substantial and necessary element of Plaintiff's state law claim." Id. In Leggette, the plaintiff alleged that the defendant breached the note and deed of trust by failing to comply with HUD regulations in (1) failing to conduct a face-to-face interview, (2) failing to inform the plaintiff of available assistance, and (3) failing to conduct a loss mitigation. Leggette, 2005 WL 2679699, at *2.

In Leggette, the court found that each ground of the plaintiff's claim for wrongful foreclosure and breach of contract "necessarily" turned on defendant's obligations under federal law, specifically HUD and the National Housing Act ("NHA"), and that the parties had "a genuine and reasonable disagreement over the 'validity, construction, or effect' of the relevant HUD regulations." Leggette, 2005 WL 2679699, at *3. The court thus determined that the federal issue was sufficiently substantial and disputed to satisfy the first two prongs of the Singh factors. The Buis court, quoting Leggette, made the same determination. Buis, 401 F. Supp.2d at 617 ("From what the court can ascertain, each basis for Buis's wrongful foreclosure claim necessarily turns on Wells Fargo's obligations under federal law.").

While Leggette and Buis note that the sole basis for the plaintiffs' claims was the violation of federal regulations, such

12

is not the case in this action.  While plaintiff refers to the regulations in her petition and bases some of her allegations for breach of contract, she also refers to violations of Texas law, and violations of the note and deed of trust itself.  Plaintiff is clearly attempting to stop foreclosure proceedings by asserting a state law cause of action based on a note and deed of trust related to real property, which note and deed contain some provisions relating to federal regulations.  In her breach of contract claim, she refers to specific terms of the note and deed of trust she contends BANA has breached, including terms stating that certain HUD regulations applied and may limit BANA's rights in some instances.  Pet. at 7-8.  She also refers to FHA provisions regarding what actions BANA may have been obligated to take prior to foreclosing on plaintiff's property.  Id. at 9.

Plaintiff then goes on to allege various breaches of the note and deed of trust based on Texas law, and she challenges BANA's authority to accelerate the loan and foreclose under Texas law, all within her breach of contract claim.  Though she has certainly referenced federal regulations as part of her state contract claim, they are not substantial federal issues sufficient to invoke federal jurisdiction over her claims.  See Goffney, 2012 WL 4127952, at *3 (finding that even though defendants' duties under federal regulations may have been

13

disputed, the federal issues "are neither 'necessary' nor 'substantial'" and that state contract law controlled whether defendants' actions violated the note or deed of trust at issue); Boyle v. Wells Fargo Bank, N.A., No. 4:11-CV-4006, 2012 WL 289881 at *1-2, (S.D. Tex. Jan. 31, 2012) (concluding that defendant failed to show that state law claims based in part on violations of Home Affordable Modification Program, Home Affordable Foreclosure Alternative, and Making Homes Affordable were sufficiently substantial or actually disputed to permit the court to exercise jurisdiction).

Still, even if the court were to find that the federal issues in the complaint are sufficiently substantial and are disputed,

> [T]he exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between the state and federal courts governing the application of § 1331.

Grable, 545 U.S. at 313-14.  Courts have recognized that "foreclosure by private power [is] a traditional creditor's remedy under state law."  Leggette, 2005 WL 2679699, at *3 (quoting Roberts v. Cameron-Brown Co., 556 F.2d 356, 359 (5th Cir. 1977)).  The regulation of foreclosure of real property "has traditionally been the province of states, despite federal

regulation of some sectors of the lending industry, and there are state law remedies available to protect mortgagors from unconscionable mortgages." Buis, 401 F. Supp.2d at 617 (quoting Leggette, 2005 WL 2679699, at *3, and Roberts, 566 F.2d at 361). The Buis court went on to explain:

> [I]t is quite conceivable that many persons . . . who seek to avoid foreclosure, or set aside foreclosure, would rely on alleged violations of HUD regulations to file actions in federal court; or the financial institutions sued for wrongful foreclosure would rely on HUD regulations to remove state court actions to federal court.  Such lawsuits necessarily could be tremendous in number.  Nothing has been presented to the court by the parties that Congress has expressed an intent to have such foreclosure-related actions, which are ordinarily handled by state courts, transferred to or filed in federal court.

Buis, 401 F. Supp.2d at 617-18.  The Buis court determined that the defendant failed to meet its burden of establishing that the federal forum could entertain the claim without disturbing the balance of federal and state judicial responsibilities.  Id. (Citing Roberts, 556 F.2d at 361 & n.4, which stated that HUD requirements "are not intended as legal prerequisites to foreclosure actions since foreclosures are governed by the terms of mortgage instructions and applicable state law").  The Leggette court reached the same conclusion, noting that "whether foreclosure is properly barred when a mortgagee fails to comply with federal loan servicing regulations is a matter to be

15

determined by the terms of the mortgage instructions and applicable state law." Leggette, 2005 WL 2679699, at *3. See also Myers v. Countrywide Home Loans, Inc., 368 F. Supp.2d 587, 588-89 (determining that a "contractual incorporation of a federal standard [HUD]" involved only the state right of the performance of the contract, not a federal right).

This action is extremely similar to both Buis and Leggette: allegations of breach of a note and deed of trust in the context of foreclosure; references to the same HUD and FHA regulations; and similar arguments from the parties as to whether federal question jurisdiction exists over the breach of contract claims because of the HUD and FHA regulations. The court thus concludes that the alleged violations of HUD and FHA regulations fall within plaintiff's state law breach of contract claim, an area of law traditionally handled by the states, and therefore, the court does not have the jurisdiction to entertain them.

2.   RESPA

In its Notice of Removal, BANA claims that because plaintiff seeks an accounting pursuant to RESPA, federal question jurisdiction exists.  Plaintiff has not attempted to bring a cause of action alleging any violations of RESPA, and mentions RESPA only under her prayer: "Defendant [BANA] be ordered to render an accounting to Plaintiff of the amounts paid and owed

16

pursuant to [RESPA]."  Pet. at 23.  Certainly such a minor

reference cannot reach the level of "substantial" and "actually

disputed" required by Grable and Merrell Dow.  Neither party is

disputing the existence or meaning of RESPA, and BANA does not

even address RESPA in its response to plaintiff's motion to

remand.  Thus, plaintiff's original petition does not

"necessarily turn on" or otherwise present a substantial federal

issue.  See Bass v. Am. Home Mortg. Servicing, Inc., No. 4:11-CV-

633, 2012 WL 1142697, at *3 (E.D. Tex. Apr. 4, 2012), adopted,

2012 WL 2565408 (E.D. Tex. July 2, 2012) (finding that where

plaintiffs sought an accounting and made references to RESPA in

their complaint, a federal cause of action was not raised).

    3.  FCRA Preemption

    In its notice of removal, BANA contends that because

plaintiff refers to damages she has incurred or will incur from

the "loss of creditworthiness" and her suffering credit

reputation, that the FCRA preempts and creates a federal cause of

action.  Plaintiff has not actually alleged any causes of action

that relate to the FCRA.  Generally, the FCRA preempts state law

defamation or negligent reporting claims, neither of which were

alleged here.  See 15 U.S.C. § 1681h(e); Young v. Equifax Credit

Info. Servs., 294 F.3d 631, 638 (5th Cir. 2002).  Thus,

plaintiff's references to harm she may have suffered as a result

of foreclosure proceedings cannot create a substantial federal
cause of action sufficient to invoke this court's jurisdiction
under FCRA.

BANA has failed to show that federal question jurisdiction
exists in this action, and has also failed to show that diversity
jurisdiction exists.  Consequently, the court is remanding this
action to the state court from which it was removed.

III.

Order

Therefore,

The court ORDERS that plaintiff's motion to remand be, and
is hereby, granted.

The court further ORDERS that the above-captioned action be,
and is hereby, remanded to the state court from which it was
removed.

The court further ORDERS that any other motions pending in
the above-captioned action be, and are hereby, denied as moot.

SIGNED December 28, 2012.

JOHN McBRYDE
United States District Judge

18